GERHARD & HEY CO. INC. (ART BOOK PUBLICATIONS, INC.)
*v.* UNITED STATES

No. 6226.—Invoices dated London, England, November 15, 1939, etc.
Certified November 22, 1939, etc.
Entered at New York, N. Y., December 16, 1939, etc.
Entry No. 50291, etc.

Third Division, Appellate Term

(Decided October 17, 1945)

*Daniel P. McDonald* for the appellant.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is an application for review of a decision of Kincheloe, J., holding that the merchandise imported between December 6, 1939, and May 16, 1940, was properly dutiable on the basis of the value found by the appraiser. The merchandise consists of illustrated books printed in English on history of art and the work of particular artists.

On May 25, 1943, after a trial, Judge Kincheloe rendered a decision holding that there was no foreign market value, no export value, and no United States value for the merchandise and that it was dutiable on the basis of the cost of production (Reap. Dec. 5875, 10 Cust. Ct. 626). Thereafter the Government moved for a rehearing and the court made an order setting aside the judgment and restoring the case to the calendar for further evidence (Reap. Dec. 5942, 11 Cust. Ct. 446). Following the rehearing, Judge Kincheloe rendered a decision (Reap. Dec. 6081) stating in part:

A timely motion for rehearing was filed by counsel for the defendant and upon reconsideration of the record I was of the opinion that the testimony of said witness was so confusing that it could not be reconciled to the extent of giving it sufficient probation to establish the costs of production, which I was convinced was the proper basis for the valuation of the involved merchandise. * * *

 * * * * * * *

After a detailed analysis of the entire record herein, I am of the opinion that the confusion still exists unreconciled and that the record contains no evidence of sufficient probation to establish the costs of production of the involved merchandise.

 * * * * * * *

Accordingly, I find the proper values for the involved merchandise to be the values returned by the appraiser.

Appellant claims that the merchandise is dutiable on the basis of cost of production and the Government claims that the appraised values represent the correct dutiable values and that appellant has failed to make out a *prima facie* case.

There was introduced into evidence a report of Assistant Treasury Attaché Fortier dated May 28, 1940, which states in part:

The books are published by the Hyperion Press, Paris, and are printed by various printers in France and Belgium. They are printed in French and English texts, the costs of which are practically the same, the only difference being the cost of translating from French into English, amounting to between 1 franc to 1.80 francs per book. The translations are done in England by various persons who do the work for different amounts depending upon the volume.

In France, the books in French text are bound both in stiff cloth-covered binding, called "broché", and in a thinner pliant cloth-covered binding called "relié toile". For the United States, the books are in English text and bound only in the flexible binding described above called "relié toile".

The report also states that the same books, printed in French, are sold by the Librairie Hypérion and the Maison du Livre Française; that the prices shown in catalogs are those at which bookstores are expected to resell; that the majority of the sales were made with a discount of 33⅓ per centum.

On the question of foreign value, the witness André Gloeckner testified that he was president of Hyperion Press and that the books with English text were not sold in France after July 31, 1939, except through The Imperia Book Co., Ltd., of London. On that date an agreement was entered into between The Commodore Press Ltd., Hyperion, and Imperia, which provided in part:

1. AS from the 1st day of July 1939 Commodore and Hyperion hereby grant to Imperia the exclusive right of sale throughout the World excepting the United States of America (hereinafter referred to as "the Territory") ALL the publications which they shall publish in the English language with their imprint (hereinafter referred to as "the English Publications")

\*       \*       \*       \*       \*       \*       \*

3. DURING the continuance of this Agreement Commodore and Hyperion shall not sell or knowingly offer for resale any of the English publications in the Territory.

Mr. Gloeckner testified that when Hyperion received any orders for English books, they were sent to Imperia and that Hyperion's price lists showed that the books were published in English merely as a matter of prestige.

Kurt Enoch of Imperia also testified that when Hyperion received any orders for books in English text they were transmitted to Imperia. Imperia apparently sold some books in English text in France—the testimony is contradictory on that point.

Defendant calls attention to the following legend appearing in French on the invoices:

I certify by the present that merchandise identical or similar, as described in this invoice are currently sold in France and generally sold for the consumption in the interior to buyers who qualified as "producers" by the terms of the New French Fiscal law and that the prices on which these sails [sic] are effectuated to the "producers" on the date of exportation are not higher mentioned in this bill. (Translation in Reap. 140256–A.)

We do not think this legend overcomes the positive statements in the record that the merchandise was sold only through Imperia; it indicates rather that the goods were sold to "producers" and not to all purchasers.

From all of the above it appears that books in English text were not freely offered for sale nor sold in France but could be obtained only through Imperia. The rule has been laid down that "a foreign market is controlled when restrictions are imposed on the resale, free use, dominion over the merchandise, or confining of sales to selected purchasers." *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. 131, 134, C. A. D. 262. No statutory foreign value can be found where the market is controlled. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *Meadows, Wye & Co. (Inc.)* v. *United States*, 17 C. C. P. A. 36, T. D. 43324; *J. H. Cottman & Co.* v. *United States*, 20 C. C. P. A. 344, T. D. 46114.

On the question of export value, there was introduced into evidence an agreement between André Gloeckner and Alexander Deutsch, acting under power of attorney for The Art Book Publications, Inc., which provided that Mr. Deutsch was to distribute and sell in the United States all the publications planned by Mr. Gloeckner; that the publications were to be charged to Mr. Deutsch at one-third the net sale price; that Mr. Deutsch was to have complete, exclusive rights for all the publications in the United States. This agreement is dated September 23, 1938, and was to be valid until December 31, 1939. An agreement dated December 1, 1939, between Hyperion, Art Book Publications (of which Deutsch was president), and French & European Publications, Inc., states that Art Book Publications was the sole selling and distributing agent of Hyperion's products in the United States, its territories, and dependencies.

The books were thus not freely offered for sale to all purchasers for exportation to the United States and no export value under section 402 (d) of the Tariff Act of 1930 can be found. *Transatlantic Shipping Co., Inc.* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118; *United States* v. *Malhame & Co.*, 24 C. C. P. A. 448, T. D. 48911.

The above-mentioned contract between Hyperion, Art Book Publications, and French & European Publications provides in part:

1. That the second party [Art Book Publications] hereby appoints the third party [French & European Publications] as its sole and exclusive customer for the purpose of selling and distributing the first party's [Hyperion's] publications of

books of paintings and art in all the states, territories and dependencies of the United States.

2. That both the first and second parties, each for itself and collectively, covenants not to sell, give away, distribute or deliver any of its publications aforesaid during the term of this agreement, to any person, firm, association or corporation other than the third party.

Since the merchandise is not freely offered to all purchasers in the principal market of the United States, there is no United States value. *United States* v. *Heemsoth-Kerner Corp.*, 31 C. C. P. A. 75, C. A. D. 252.

The proper basis of valuation appears to be the cost of production and the only remaining issue is whether or not appellant has established the cost of production in accordance with the requirements of section 402 (f). Appellant is required not only to prove that the value found by the appraiser is erroneous, but to establish the correct dutiable value. *G. & H. Transport Co., Inc.* v. *United States*, 27 C. C. P. A. 159, C. A. D. 78; *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. 36, C. A. D. 246.

André Gloeckner, president of Hyperion Press, testified that he had personal knowledge of the books of his concern and that he supervised the buying of the materials and all the fabrication. He had prepared and produced at the trial a tabulation showing the cost in francs of producing some of the books involved herein, stating that it was an accurate compilation of the cost of production. This list does not include all of the books involved herein but does include others. The following is taken from the tabulation:

| Title | Manet |
|---|---|
| Editorial expense | 6000 |
| Composition & printing from text | 18000 |
| Color plates | 20000 |
| Black & white plates | 24000 |
| Paper | 90000 |
| Printing color | 18000 |
| Black & white prints | 16000 |
| Binding | 105000 |
| Jacket | 6000 |
| Total | 303000 |

Mr. Gloeckner then stated that in 1938 the general expenses were 10 per centum and in 1939, 12 or 12½ per centum. He stated that he was familiar with the profit generally made by publishers in similar business and testified:

It is a general principle for all the publishing business, for all the publishers in the world, and it is one-quarter from the retail price must be all the cost price, without profit and without general expense, and about 25 per cent must be, and not more, the profit and the general expenses together, each about 10 to 12½. That is in America, and France, and Germany alike.

Q. When you say 25 per cent, you mean 25 per cent of the list or sale price? A. If a book is one dollar retail price, it must be 25 cents all the cost price, and 25 cents about all the general expense and profit.

On cross-examination he testified that 25 per centum of the retail price was the cost of printing; 12 per centum was for overhead; profit was 10 per centum; so the books cost 47 per centum of the retail price. On redirect, he testified:

R. Q. Now, Government counsel interrogated you about your 25 per cent cost of production, and your 10 per cent profit, I believe it.was, and 12 per cent general expenses, and he was adding the.25 and 10 and 12 per cent together and getting 47 per cent? A. Yes.

R. Q. On that 25 per cent, that represented a theoretical cost of production; is that right? A. Yes.

R. Q. This 10 per cent profit, would that be 10 per cent of the retail price, or 10 per cent of the 25 per cent of cost? A. On 25 per cent of the cost.

R. Q. Assuming that a book was published and sold for a dollar, the production cost being 25 cents under your hypothetical case, your profit 10 per cent, would that be 10 per cent of 25 cents?—A. Yes.

R. Q. Your profit would be equal to 2½ cents?—A. Yes.

R. Q. Would the same be true of your general expenses? Would that be 12 per cent of 25 cents?—A. Yes.

R. Q. Or about 3 cents?—A. Yes.

R. Q. You didn't mean to convey to Government counsel that it cost 25 cents of this dollar item, and then 10 cents for profit, and 12 cents for general expenses? You didn't mean that?—A. No.

Mr. Gloeckner also stated that his business amounted to six million francs a year; that he paid 40,000 francs for rent, 960,000 francs for salaries for others, and between 180,000 and 240,000 francs for himself, making total expenses of about 1,180,000 to 1,240,000 francs or 20 per centum of his business.

When the case came on for rehearing, the witness attempted to explain the discrepancy by stating that he did not understand the English words "retail price"; that he thought that meant cost price. (The witness was French and at the original trial counsel for plaintiff had brought an interpreter, but after objection by the Government, the interrogation was carried on in English.) He stated that the retail price had no relation to the overhead, and the 12½ per centum for general expenses was 12½ per centum of the labor and material and not the retail price.

There is also to be considered the fact that at the time Art Publications was organized, Gloeckner expected eventually to own shares of the company. In fact, in March 1940, he owned 1400 out of 1500 shares of the corporate stock. This might account for the fact that the French books were sold in France at a discount of 33⅓ per centum while the English books were sold in the United States at a discount of 66⅔ per centum. Mr. Gloeckner stated:

X Q. And when you invoiced this at 66⅔ percent off the $3.50 or $3 price whatever the book was, you invoiced it at a price at which you thought you could make a profit; is that correct?—A. Yes.

X Q. And was it also caused by the fact that you were sharing the profit of 66⅔ per cent?—A. Yes, it was.

/

442

X Q. And because you owned the company in the United States?—A. Yes, that is true.

It is impossible to say on this record what the general expenses and the profits were. At one time Mr. Gloeckner testified that they equalled a certain percentage of the retail price of the book and at another that they represented a certain percentage of the cost price of the book. The explanation that he did not understand the English term "retail price" is not convincing since he made both statements at the original trial and gave lengthy testimony in fairly adequate English.

Since appellant has failed to establish the correct value of the merchandise, it cannot prevail. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332; *Sears, Roebuck & Co.* v. *United States*, *supra*. The court below, following section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. 62, C. A. D. 286, rather than dismissing the appeal, found the proper values for the merchandise to be the values returned by the appraiser.

For the reasons indicated and following the authorities cited, the judgment below is affirmed.

Judgment will be rendered accordingly.